# THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF NEW YORK – BROOKLYN DIVISION

| | |
|---|---|
| BARBARA THOMPSON, an individual; TAYLOR STEWART, an individual<br><br>                            Plaintiffs,<br>vs.<br><br>BK VENTURE, LTD d/b/a STARLETS, a NEW YORK corporation; KEVIN BURCH, an individual; DOE MANAGERS 1- 3; and DOES 4-10, inclusive,<br><br>                            Defendants. | **Case No. 1:22-cv-00470-HG-RML**<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT** |

TO THIS COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** plaintiffs Barbara Thompson and Taylor Stewart (collectively, "Plaintiffs"), by and through undersigned counsel, hereby request that this Court approve the settlement agreement reached between Plaintiffs and defendants BK Venture, LTD dba Starlet's and Kevin Burch (collectively, "Defendants").

The Agreements are attached as exhibits to the Declaration of John P. Kristensen, filed concurrently with this Motion. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 22, Exhibit ("Exs.") 1 and 2. Plaintiffs further submit to this Court that it should approve the Settlement Agreement for the reasons described in the Memorandum of Points and Authorities. Defendants do not oppose the filing of this Motion.

Dated: May 22, 2023

*/s/ John P. Kristensen*
John P. Kristensen (*Pro Hac Vice*)
California Bar No. 224132
Justice D. Turner (*Pro Hac Vice*)
California Bar No. 336579
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Blvd.
Beverly Hills, CA 90211
Telephone: (310) 273-1230
Fax: (310) 858-1063
*kristensen@cz.law*
*kristensenteam@cz.law*
*jturner@cz.law*

***Attorneys for Plaintiffs***

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

### a. Background

Plaintiffs Barbara Thompson ("Thompson") and Taylor Stewart ("Stewart") were exotic dancers for defendants BK Venture Group LTD dba Starlet's and Kevin Burch (collectively, "Defendants") at Defendants' club located at 49-09 25th Avenue, Woodside, New York 11377. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 23.

Thompson filed the Complaint for this action on January 26, 2022, as a collective action. *See* Dkt. 1. Stewart subsequently opted into this lawsuit. *See* Dkt. 5.

Following this Court's April 8, 2022, Scheduling Order, on May 17, 2022, during this matter's Case Management Conference, this Court issued an Order whereby this case was referred to mediation. *See* Dkt. 17, On March 20, 2023, the Parties held mediation with Linda Gerstel via Zoom Video Conference, which resulted in the settlement of the entire matter, as further explained below. *See* Dkt. 30; Kristensen Decl. ¶ 24.

## II.   FACTUAL BACKGROUND

Plaintiffs were exotic dancers at Defendants club, Starlet's, within the three (3) years prior to the filing of the lawsuit. Plaintiffs allege that they were misclassified as independent contractors and, were therefore, owed wages due to that misclassification. *See* Kristensen Decl. ¶ 23.

Defendants owned an operated the adult-oriented entertainment facility, Starlet's, where Plaintiffs worked, located at 49-09 25th Ave., Woodside, New York 11377. The individual owner is/was Kevin Burch. *See* Kristensen Decl. ¶ 25.

## III.   LEGAL NATURE OF PLAINTIFFS' CLAIMS

Plaintiffs alleged the following causes of action: (1) Failure to Pay Minimum Wage, 29 U.S.C. § 206; (2) Unlawful Taking of Tips, 29 U.S.C. § 203; (3) Illegal Kickbacks, 29 C.F.R. § 531.35; (4) Forced Tip Sharing, 29 C.F.R. § 531.35; (5) Failure to Pay Minimum Wages, M.Y.

Lab. Law § 650, *et seq.*; (6) Illegal Kickbacks, N.Y. Lab. Law § 1998-b, *et seq.*; (7) Forced Tip Sharing, N.Y. Lab. Law § 196-d, *et seq.* Notably, Plaintiffs wage and hour claims under N.Y. Lab. Law § 650, *et. seq.*, have a six-year statutory period. N.Y. Lab. Law § 663(3).

Plaintiffs categorized their damage claims into three (3) distinct categories. The first type of damage claims related to Defendants' failure to pay minimum wages pursuant to both federal and state law. *See* 29 U.S.C. §§ 206 of the FLSA, and N.Y. Lab. Law § 650, *et seq*. The other damage claim under these legal grounds related to Plaintiffs' contentions that Defendants required them to "tip-out" unlawfully and at Plaintiffs' own expense. Plaintiffs' claims addressed two (2) types of tipping violations. Plaintiffs alleged that the dancers were "encouraged" to tip DJs, managers, and security. Plaintiffs argued that this constituted a forced subsidization of Defendants' club, which represented unlawful "kickbacks" in violation of 29 U.S.C. § 203. Plaintiffs further contended that this forced tipping was a violation of 29 C.F.R. § 531.35, which resulted in the dancers' subsidizing the clubs' payment of wages to other underpaid club employees.

Lastly, Plaintiffs claimed that Defendants forced them to pay "house fees" merely for the ability to work at Starlet's. Plaintiffs maintain that they were required to pay these house fees to Defendants at the end of each shift, in violation of 29 C.F.R. § 531.35.

Thus, when Plaintiffs ultimately resolved this matter, there were seven (7) separate claims, maintained by each dancer, the damage calculation of which went into the valuation of their respective claims. Furthermore, there was a substantial debate between the Parties regarding the number of shifts and dates each Plaintiff worked. Defendants disagreed with Plaintiffs' factual assertions.

### IV. THE SETTLEMENT AGREEMENT

Under the Settlement Agreement, Defendants have agreed to pay Plaintiffs a gross settlement in the amount of $70,000.00 for their damage claims. Payment is due within thirty (30) days after receipt of Court approval. The allocations are as follows:

| PLAINTIFF | GROSS SETTLEMENT AMOUNT |
|---|---|
| Thompson | $44,390.24 |
| Stewart | $25,609.76 |
| **TOTAL** | **$70,000.00** |

*See* Exs. 1-2.

## V. PLAINTIFFS' DAMAGE ANALYSIS

After conducting discovery, including seeking documentation regarding the dates and times when Plaintiffs worked at Starlet's, a more thorough damage analysis was conducted to attempt to discover corroborating evidence of the dates and hours when Plaintiffs claimed to have performed at the venue.

Thompson worked at Starlet's from January 2016 to March 2019. Her FLSA claim was only for two to three months between January 2019 and March 2019. This would require a willfulness finding by a jury. Her potential claim under New York Law was longer. During the entire period, Thompson claimed to have worked approximately ten (10) shifts per month, for a total of three-hundred and eighty (380) shifts during that period. Thompson would pay around $60.00 in house fees. Because Plaintiffs' New York labor law claims carry a six-year statutory period, Thompson's damage calculations went from January 2016 to January 2022. Importantly, the New York state minimum wage increased each year that Thompson worked for Starlet's.[1] As such, Ms. Thompson's nightly loss, per year, was accounted as follows:

---

[1] The New York state minimum was $9 per hour in 2016, $11 per hour in 2017, $13 per hour in 2018, and $15 per hour in 2019.

| Barbara Thompson - 2016 | |
|---|---:|
| Minimum Wages (8-hour shifts) | $72.00 |
| House Fees | $60 |
| **Total Nightly Loss:** | $132.00 |
| Barbara Thompson - 2017 | |
| Minimum Wages (8-hour shifts) | $88.00 |
| House/Stage Fees | $60.00 |
| **Total Nightly Loss:** | $148.00 |
| Barbara Thompson - 2018 | |
| Minimum Wages (8-hour shifts) | $104.00 |
| House/Stage Fees | $60.00 |
| **Total Nightly Loss:** | $164.00 |
| Barbara Thompson - 2019 | |
| Minimum Wages (8-hour shifts) | $120.00 |
| House/Stage Fees | $60.00 |
| **Total Nightly Loss:** | $180.00 |

Thompson did not have substantial documentation corroborating her hours.

Stewart had a similar claim, with only a seven month claim for her FLSA claim. Stewart worked at Starlet's from January 2013 to November 2019. Stewart worked approximately ten (10) shifts per month, for a total of four-hundred (440) shifts during her employment with Starlet's. However, at most her claim was from February 2016 to November 2019. Stewart paid roughly $60.00 in house fees. such, Ms. Stewart's nightly loss, per year, was accounted as follows:

| Taylor Stewart - 2016 | |
|---|---:|
| Minimum Wages (8-hour shifts): | $72.00 |
| House Fees | $60.00 |
| **Total Nightly Loss:** | $132.00 |
| Taylor Stewart - 2017 | |
| Minimum Wages (8-hour shifts): | $88.00 |
| House Fees | $60.00 |
| **Total Nightly Loss:** | $148.00 |
| Taylor Stewart - 2018 | |
| Minimum Wages (8-hour shifts): | $104.00 |
| House Fees | $60.00 |
| **Total Nightly Loss:** | $164.00 |
| Taylor Stewart - 2019 | |
| Minimum Wages (8-hour shifts): | $120.00 |
| House Fees | $60.00 |
| **Total Nightly Loss:** | $180.00 |

Records maintained by Defendant differed substantially from Plaintiffs' estimates as to the frequency with which each performed at the venue. That discrepancy played a role in weighing the value for each claim. Furthermore, the collectability of the club played a substantial factor in reaching the settlement. *See* Kristensen Decl. ¶ 29.

Plaintiffs' counsel has significant experience in litigating employment cases. The settlement amounts and terms resulted in significant resolutions for the Plaintiffs. *See* Kristensen Decl. ¶ 27, 36-54; Exs. 7-27.

Plaintiffs' counsel incurred $1,546.62 in costs that are being allocated evenly to both Plaintiffs in their settlement agreements. Plaintiffs' counsel has a lodestar amount of over

$30,000.00 and, pursuant to the retainer agreement and the release signed by the Plaintiffs, are entitled to 45% of the settlement, but are instead receiving $27,453.38 in fees, which is 39%. The lodestar is greater than the amount of fees Plaintiffs' counsel is seeking in attorneys' fees. Plaintiffs' counsel is seeking an inverse multiplier. *See* Kristensen Decl. ¶ 28.

Plaintiffs' counsel litigated this case extensively. The settlement amounts are significant amounts and take into account the following: (a) the amount of time litigated; (b) having to litigate a number of claims; (c) the ability to reach a resolution and collect, which is relevant in this current and unknown economic environment. *See* Kristensen Decl. ¶ 29.

In exchange for the consideration described above, Plaintiffs have agreed to dismiss their claims and causes of action for alleged violations of the FLSA and any state law claims stemming from Plaintiffs' employment with the Defendants at issue in the Complaint. *See* Kristensen Decl. ¶ 22; Exs. 1-2.

## VI. LEGAL STANDARD

In FLSA matters, before a district court enters judgment, it must scrutinize the settlement agreement to determine that the settlement is fair and reasonable. *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (referencing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (explaining that "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness"). In addition, the parties must provide the court with enough information to "examine the bona fides of the dispute." *Wolinsky*, 900 F. Supp. 2d at 335 (citing *Dees v. Hydrary, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010). The ultimate question is whether the proposed settlement reflects a fair and "reasonable" compromise of dispute issues rather than a mere waiver of statutory rights brought by an employer's overreaching." *Wolinsky*, 900 F. Supp. 2d at 335 (citing *Mosquera v. Masada Auto Sales, Ltd.*, 099-CV-49925 (NGG), 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether the "settlement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335-336 (citing *Medley v. Am. Cancer Soc.*, No. 10 CV 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y.  July 23, 2010); *see also, e.g., Dees*, 706 F.Supp.2d at 1241, 1244. Given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant; (2) "a likelihood that the claimant's circumstances will recur; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of a "mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Dees*, 706 F. Supp. 2d at 1244.

As discussed below, these factors strongly weigh in favor of approving this settlement.

### VII.    THE SETTLEMENT IS A REASONABLE COMPROMISE OF A BONA FIDE DISPUTE

The Court should approve the settlement because it reflects a reasonable compromise of a bona fide dispute regarding Defendants' FLSA liability. There was no collusion in reaching the settlement. The parties were adequately represented by competent counsel experienced in litigating cases under the FLSA, and the settlement was reached as a result of good-faith, arms' length negotiations between the Parties. Carpenter & Zuckerman has tried multiple employment cases and obtained substantial settlements against employers, including against dance clubs. John P. Kristensen has been appointed class and collective counsel many times during their decades of practices. *See* Kristensen Decl. ¶ 31.

Mr. Kristensen recently tried an FLSA dancer case in July 2022 in the Western District of Texas and obtained a verdict on behalf of two dancers. *See Langley v. R P M Dining, LLC*, Case No. 1:20-cv-00890-RP (W.D. Tex. 2020) at Dkt. 139). *See* Kristensen Decl. ¶ 55.

The Parties have vastly different opinions about the classification of Ms. Thompson and Ms. Stewart as employees or independent contractors. The Parties engaged in written discovery and exchanged relevant documents, including the agreements between the parties and documents evidencing the Plaintiffs' performances at Starlet's. Counsel for the Parties were cognizant and aware of each side's arguments and positions pertaining to employee classification. The risk for Defendants was that, in a fee-bearing case, the attorneys' fees would dwarf the damages and the risk of a verdict against them would cause additional repercussions to their business. The risk for Plaintiffs was that Plaintiffs' documentation would not be enough to demonstrate the extent of their damages in front of a jury in this District Court. While Plaintiffs took issue with the accuracy of Defendants' records, Plaintiff had scarce records, and thus would have had to rely on their own testimony to rebut Defendants' documents.

Because the Parties disputed foundational aspects of the case, the purpose of the bona fide dispute requirement has been satisfied here. *See Lynn's Food Stores*, 679 F.2d at 1353 ("The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime, compensation, or liquidated damages when no actual dispute exists between the parties.").

### VIII. THE SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION

In determining whether the proposed settlement is fair and reasonable, district courts in the Second Circuit, including this district court, consider the totality of circumstances, including but not limited to the following factors: (1) plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether the "settlement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at

335-336 (citing *Medley v. Am. Cancer Soc.*, No. 10 CV 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010); *see also, e.g., Dees*, 706 F.Supp.2d at 1241, 1244.

1. Plaintiff's Range of Possible Recovery

The FLSA claims for Thompson was small and a couple months. Stewart's claim was for seven months. Courts have found FLSA cases settling for approximately 25%–35% of the total possible recovery to be reasonable. *See*, *e.g.*, *Jennings*, 2018 WL 4773057, at *5–*6; *Selk*, 159 F.Supp.3d at 1175; *Glass v. UBS Financial Services, Inc.*, No. 06-CV-4068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009); *Greer v. Pac. Gas & Elec. Co.*, No. 15-CV-1066-EPG, 2018 WL 2059802, at *8 (E.D. Cal. May 3, 2018); *Johnson v. MetLife, Inc.*, No. SACV 13-128-JLS, 2014 WL 12773568, at *9 (C.D. Cal. Nov. 6, 2014).

Plaintiffs' range of recovery was potentially greater than the settlement. Nevertheless, this is well within the realm of reasonable.

2. The Complexity, Expenses, and Likely Duration of Litigation

The duration, expense and ability to collect any judgment all way in favor of the settlement. The Plaintiffs are receiving significant settlements, and getting paid promptly. There was no trial date, and the litigation could have lasted years in this District, and then compounded with enforcing the judgment. This settlement provides valuable finality to Plaintiffs. Courts will approve an FLSA settlement wherein there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all. *See Lockwood v. CIS Servs., LLC,* No. 3:16-CV-965-J-39-PDB, 2019 WL 2226126, at *9 (M.D. Fla. May 3, 2019), *report and recommendation adopted*, No. 3:16-CV-965-J-39PDB, 2019 WL 3383628 (M.D. Fla. June 13, 2019).

3. Stage of Proceedings and Amount of Discovery Completed

The stage of the litigation was ripe for resolution. The liability issues were not different than other dancer FLSA cases. The main issue would be damages and who had better records.

4. Opinions and Experience of Counsel

Counsel for Plaintiffs has substantial experience litigating wage and hour cases and handling complex and class actions. Carpenter & Zuckerman has tried multiple employment cases and obtained substantial settlements against employers, John P. Kristensen has been appointed class and collective counsel many times during their decades of practice. Mr. Kristensen tried an FLSA dancer case in July 2022 in the Western District of Texas and obtained a verdict on behalf of two dancers. (*See Langley v. RPM Dining, LLC*, Case no. 1:20-cv-890-RP (W.D. Tex., Dkt. 139). The counsel requirements are met.

5. The Risk of Fraud or Collusion

When considering the final factor, Courts have found no existence of fraud or collusion behind a settlement when the Parties engaged in arms' length negotiations to arrive at the Settlement and were only able to settle this matter following mediation presided over by an experienced neutral. *Duren v. Int'l Follies, Inc.*, No. 1:19-CV-01512-ELR, 2022 WL 3337249, at *2 (N.D. Ga. June 6, 2022); s*ee also Lynn's Food Stores*, 679 F.2d at 1354 (noting a settlement reached in the "adversarial context" where the plaintiff is represented by counsel is more likely to be fair and reasonable); *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (settlement outside FLSA context showed no signs of fraud or collusion where the settlement was reached before an "experienced and well-respected mediator" following arm's-length negotiations and substantial litigation); *see George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d, 1356, 1369-70 (N.D. Ga. 2019) (holding in FLSA hybrid/collective action, settlement of action by mediation with an experienced mediator confirms that the process was procedurally sound and not collusive).

This factor, therefore, weighs in favor of approval.

### IX. THE REQUEST FOR ATTORNEYS' FEES AND COSTS IS REASONABLE

#### A. *Plaintiffs' Attorneys' Fees Totaling 45% of the Settlement Is a Reduction of the Lodestar and Would Therefore Be a Reasonable Award*

It is well settled that a reasonable amount of fees is determined pursuant to the "lodestar approach," which involves calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir.2001) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 485 (D. Ariz. 2019) ("[t]o determine a reasonable attorneys' fee under FLSA, the Court uses the lodestar method."); *Mills v. Cabral*, No. CIV.A. 06-10133-RGS, 2010 WL 2553889, at *1 (D.Mass. June 18, 2010) ("[i]n determining an appropriate award of fees and costs under the FLSA, the court employs the lodestar approach."); *Marrotta v. Suffolk Cty.*, 726 F.Supp.2d 1, 25 (D.Mass. 2010) (approving FLSA attorneys' fees at lodestar amount).

In this case, Plaintiffs' counsel has a lodestar of over $30,000.00 and costs. *See* Kristensen Decl. ¶ 34 and 35; Exs. 5-6. However, Plaintiffs' counsel is merely seeking $27,453.38 in fees, which is less than their lodestar and consists of 39% of the total settlement. *See id.* Plaintiffs counsel has been awarded 45% in many FLSA cases. In other words, Plaintiffs' counsel is seeking less than what they would otherwise be entitled to based on the time they have spent litigating this matter. *See id.*

The fees sought in this matter are commensurate with the time and effort exerted to achieve a favorable settlement and the overall skill of Plaintiffs' attorneys. Plaintiffs' counsel is well versed in both FLSA collective actions and Rule 23 class actions and have achieved numerous successful outcomes. Furthermore, Plaintiffs' attorneys' hourly rates are reasonable and are similar to those approved by other district courts throughout the country. *Id.*

In *Macklin v. Biscayne Holding Corp et al*, 1:19-cv-00561-WES-PAS (D.R.I. 2019), Plaintiffs' counsel sought approval of a similar FLSA settlement involving the wage and hour

claims of exotic dancers. *Id*. In the *Macklin* case, Plaintiffs' counsel sought a reduction of their lodestar and a fee award consisting of 45% of the settlement. *See id.* There, Judge Smith found both the settlement and the attorney's fees and costs to be reasonable. *See id.*

Also, while the lodestar amount is presumed to be a reasonable calculation of attorneys' fees, it is within the Court's discretion to adjust the lodestar figure. *See Marrotta*, 726 F.Supp.2d at 25. Within the past tthree years alone, three separate judges in California have granted Plaintiffs' counsel's request to apply a negative modifier to the lodestar in order to achieve a fee award comprising of 45% of the total FLSA settlement. *See* Kristensen Decl. at ¶¶ 36-54; Exs. 7-25. District courts in Florida and Wisconsin have followed suit and also granted Plaintiffs' counsel attorney's fees totaling 45% of the settlement. *Id.*

Ultimately, the FLSA settlements in this case represent a far more favorable outcome for Plaintiffs than if they pursued their claims through a Rule 23 class action. By virtue of their sheer size, class actions often lead to a smaller award for each individual plaintiff. In *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015), a similar exotic-dancer wage-and-hour class case settled for roughly $15 million. *See Hart*, 2015 WL 5577713 at *5. However, the Rule 23 class comprised of 2,208 members and each only received on average $4,254.98. *See id.* Similarly, in *Ortega v. The Spearmint Rhino Companies Worldwide Inc., et al.,* 5:17-cv-00206-JGB-KK (C.D. Cal. July 5, 2021), the district court awarded a net settlement amount of $2,600,000 to an exotic dancer class action. However, the class consisted of 650 individuals and the awards averaged out to only $4,000 per class member. *See id; see also Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 2494569, at *3 (N.D. Cal. May 14, 2020) (granting preliminary approval of Rule 23 settlement on behalf of exotic dancers that would pay "$836 per class member"); *Doe 1-2 v. Deja Vu Servs., Inc.*, 2017 WL 2629101, at *5 (E.D. Mich. June 19, 2017), *aff'd sub nom. Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) (approving Rule 23 settlement on behalf of exotic dancers, many of whom worked in California, where "the average payment from the

cash pool will be around $200"); *Byrne v. Santa Barbara Hospitality Services, Inc.*, C.A. No. 17-00527, Dkt. 178 (C.D. Cal. Dec. 14, 2018) (approving settlement proposing to pay 566 claiming class members between $350,884 to $598,453, or average shares of between $620 and $1,057 per participating class member).

Here, Plaintiffs' attorneys seek an amount totaling less than their lodestar amount of over $30,000.00 in the amount of $27,453.38. *See* Kristensen Decl. ¶ 35; Ex. 5. Moreover, Plaintiffs' counsel experience as a litigator in FLSA actions yielded positive fruits to Plaintiffs, that they otherwise would not have had they not pursuit this matter with them. This is also a modest amount compared to many FLSA settlements and consistent with Congress's intent to incentivize counsels to take minimum wage cases were it would be otherwise uneconomical.

### X.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion in its entirety and approve the settlements between Plaintiffs and Defendants.

Dated: May 22, 2023

*/s/ John P. Kristensen*
John P. Kristensen (*Pro Hac Vice*)
California Bar No. 224132
Justice D. Turner (*Pro Hac Vice*)
California Bar No. 336579
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Blvd.
Beverly Hills, CA 90211
Telephone: (310) 273-1230
Fax: (310) 858-1063
*kristensen@cz.law*
*kristensenteam@cz.law*
*jturner@cz.law*

***Attorneys for Plaintiffs***

# **CERTIFICATE OF SERVICE**

I certify that on Tuesday, May 23, 2023 a true and correct copy of the attached **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FLSA SETTLEMENT APPROVAL** was served via CM/ECF upon the following parties pursuant to Rule 5 of the Federal Rules of Civil Procedure:

Jeffrey P. Brodsky, Esq.
**THE KATSORHIS LAW FIRM, P.C.**
77-53 Main Street
Flushing, New York 11367
Phone: (718) 591-6900
Email:  *gklawny@gmail.com*
            *jb@katsorhislaw.com*


*Counsel for Defendants*

                                                                        */s/ John P. Kristensen*
                                                                        John P. Kristensen